# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-468V
UNPUBLISHED

| | |
|---|---|
| RICHARD PROCTOR,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: December 3, 2019<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Michael Patrick Milmoe*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.

*Christine Mary Becer*, U.S. Department of Justice, Washington, DC, for respondent.

## FINDINGS OF FACT[1]

On March 30, 2018, Richard Proctor filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that he developed a shoulder injury related to vaccine administration ("SIRVA") as a result of receiving an influenza ("flu") vaccine on December 5, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find the onset of Petitioner's SIRVA occurred within 48 hours of his vaccination.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.   Relevant Procedural History

Following the initial status conference held on June 8, 2018, Respondent was ordered to file a status report indicating how he intends to proceed in this case. ECF No. 9. On April 19, 2019, Respondent filed a status report confirming that he intended to defend this case, and requesting a deadline for the filing of his Rule 4(c) Report. ECF No. 22.

Respondent filed his Rule 4(c) Report ("Res. Report") on June 4, 2019. ECF No. 23. In it, Respondent argued that Petitioner has not established that he suffered a SIRVA because he did not establish onset of his shoulder pain within 48 hours of vaccination. Res. Report at 5. Specifically, Respondent noted that Petitioner first presented for care on January 9, 2017, approximately five weeks after his vaccination. *Id.* at 4. Respondent also noted that Mr. Proctor next reported shoulder pain in July of 2017, roughly six months later. *Id.* During that six-month period, Petitioner had eight different medical visits, none of which reference shoulder pain. *Id.*

On June 5, 2017, Petitioner filed a response to the Rule 4(c) Report requesting that I issue a ruling on the record regarding onset after the parties fully briefed the issue. ECF No. 24. On June 27, 2019, a scheduling order was issued setting deadlines for any additional evidence and a motion for a ruling on the record. ECF No. 26.

On August 5, 2019, Petitioner filed an affidavit from Julie Somers, his longer-time girlfriend. ECF No. 27-1. The parties subsequently filed their relevant briefs. ECF No. 28-30.

## II.   Issue

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

## III.   Authority

Pursuant to Vaccine Act § 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act § 11(c)(1). A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Vaccine Act § 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

2

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Vaccine Act § 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Curcuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational). Further, affidavits submitted by and on behalf of a petitioner a can work in tandem with medical records to provide preponderant evidence. *Tenneson v. Sec'y of Health and Human Servs.,* No. 16-1664V, 2018 WL 3083140, at *6 (Fed. Cl. Mar. 30, 2018), *review denied*, 142 Fed. Cl. 329 (2019).

## IV.     Finding of Fact

For the reasons discussed below, I find that the onset of Mr. Proctor's left shoulder pain occurred within 48 hours of vaccination. I make this finding after a complete review of the record including all medical records, affidavits, Respondent's Rule 4(c) Report, and the additional evidence filed. Specifically, I base the finding on the following evidence:

- On December 5, 2016, Mr. Proctor received an intramuscular injection of the flu vaccine in his left deltoid. Petitioner's Exhibit ("Pet. Ex.") 1 at 1-2.

- On January 9, 2017, Petitioner presented to Dr. John C. Arrabal, his primary care physician. Pet. Ex. 2 at 19. The chief complaint is listed as "Flu -Labs". *Id.* At that time, Petitioner reported left trapezius pain after his flu vaccine. *Id.*[3]

- Six months later, on July 25, 2017, Petitioner presented to Dr. Arrabal again for a sick visit and left shoulder pain. Pet. Ex. 2 at 4. Petitioner stated that he "had a shot at VA 12/16 and after that has been having pain left shoulder." *Id.* On examination, Petitioner was observed to have left-sided

---

[3] The original record includes handwritten notes, of which portions are difficult to read. A typed version of the January 9, 2017 records was filed on March 8, 2019. Pet. Ex. 8 at 2. The typed version states that Petitioner reported "Pain in [l]eft arm after flu shot". *Id.*

- neck pain and posterior left shoulder pain increasing with abduction. *Id.* at 5. Petitioner was assessed with a probable rotator cuff tear. *Id.*

- Petitioner underwent a left shoulder MRI on August 21, 2017. Pet. Ex. 4 at 177. The MRI showed fluid in the subacromial-subdeltoid bursa.

- Mr. Proctor was seen multiple times by Dr. Frederick Lohr for shoulder pain between September 20, 2017 and October 17, 2018. Pet. Ex. 3 at 8 (visit on September 20, 2017), at 7 (visit on October 11, 2017), at 5 (visit on November 1, 2017), at 4 (visit on November 29, 2017); Pet. Ex. 7 at 1-3. Upon examination, Petitioner's shoulder was painful with motion, showed positive impingement tests, and rotator cuff weakness. *Id.* Petitioner was continually assessed with a non-traumatic partial tear of his left rotator cuff. *Id.*

- On April 13, 2018, Petitioner filed an affidavit stating that he received a flu vaccination on December 5, 2016. Pet. Ex. 5 at 1. Petitioner further stated that "the next morning, my left shoulder was in severe pain and I could hardly move my arm." *Id.* Despite the pain, Petitioner reported that he waited until January to seek medical care for his arm because he "was already on the schedule for another visit with [his] doctor…so through the holidays [he] just took Tylenol to manage the pain." *Id.*

- On August 5, 2019, Petitioner filed an affidavit from Julie Somers, his long-term girlfriend. Pet. Ex. 10. Ms. Somers recalled that on December 6, 2016 (one day after Petitioner's flu vaccination) he complained that his arm was in terrible pain when he woke up. *Id.* at 1.

I find the sworn testimony of Petitioner's witnesses to be credible and in agreement with the contemporaneously created treatment records.

Respondent asserts that Petitioner has not established the onset of his left shoulder injury was within forty-eight hours of his flu vaccination. Response to Petitioner's Motion for Ruling on the Record ("Res. Mot.") at 5. Respondent further notes that the medical records are not specific regarding the onset of Petitioner's pain, and merely indicate it began "after" he received the flu shot. *Id.* In addition, Respondent argues that the affidavits filed by Petitioner should be afforded little weight because they do not provide sufficient foundation to explain how the declarants "vividly recollect [P]etitioner's alleged left shoulder pain that reportedly occurred a few years earlier". *Id.*[4]

However, as described above, multiple medical records temporally associate the onset of Petitioner's pain with the December 2016 flu vaccination. Pet. Ex. 2 at 4, 19. Further, the affidavits submitted by and on behalf of Petitioner work in tandem to

---

[4] Respondent also asserts that the veracity and substance surrounding the declarant's recollection would be typically evaluated on cross-examination, and without Petitioner's testimony the Chief Special Master is unable to make determinations regarding credibility. Res. Mot. at 5.

corroborate Petitioner's allegations that his shoulder pain began within forty-eight hours of receiving his flu vaccination. And although there is a lengthy gap in Petitioner's treatment, contemporaneous records from the start, and end, of this gap are consistent with his contentions.

Based on all of the records discussed above, I find preponderant evidence that the onset of Petitioner's left shoulder pain occurred within 48 hours of the December 5, 2016 flu vaccination.

### V.     Scheduling Order

Respondent shall file a status report, by no later than **Friday, December 27, 2019**, indicating whether he is interested in exploring an informal resolution of Petitioner's claim.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
